## Cox, Appellant, *v.* Watts, Twells & Co., Ltd.

*Limited partnership—Subscriptions—Contributions—Execution.*

Where a person subscribes a sum of money to a limited partnership association to be applied to the payment of a mortgage on real estate which he has contributed to the association, and he fails to pay the same, in consequence of which the mortgage is foreclosed and the real estate is bought in by the mortgagee for his mortgage, the subscriber may be compelled to pay the money by execution issued against him personally on a judgment against the association.

A person contributed real estate to a limited partnership association. He also subscribed his further interest in certain real estate, " as the same is to be acquired by the payment of $8,000 on account of a certain mortgage on the real estate by the payment of which the net value of the said property will be proportionately increased." The subscriber paid a portion only of the $8,000. The mortgage was foreclosed and the mortgagee bought the real estate in for his mortgage. *Held*, that execution could issue against the subscriber personally for the unpaid balance of the $8,000.

*Limited partnerships—Cash subscriptions—Act of May 1, 1876.*

In the above case the subscription should be treated as an unpaid balance of a cash subscription to the capital of the company under the act of May 1, 1876, P. L. 89.

Argued March 30, 1893.   Appeal, No. 325, Jan. T., 1893, by D. W. Cox, trustee, from order of C. P. No. 2, Phila. Co., March T., 1889, No. 587, discharging rule to show cause why execution should not issue. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ.

Rule for execution against defendants individually.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were (1) in discharging rule for execution against defendants individually, for the amount of capital unpaid by them respectively; (2) in not awarding execution against Ethelbert Watts for the sum of $10,916.66, being the amount unpaid on his subscriptions; (3) in not awarding execution against Ethelbert Watts for the sum of $4,500 at least.

*Robert Snodgrass, Charles Carver* with him, for appellant, cited: Hill v. Stetler, 127 Pa. 145; Maloney v. Bruce, 94 Pa.

249; Van Horn v. Corcoran, 127 Pa. 265; Bement v. Phila. Brick Machine Co., Limited, 5 W. N. 58.

*Wm. Wilkins Carr, Geo. Tucker Bispham* with him, for appellee, cited: Cock v. Bailey, 146 Pa. 326; Rehfuss v. Moore, 134 Pa. 462; Laflin v. Steytler, 146 Pa. 434; Lauder v. Logan, 123 Pa. 34.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 2, 1893:

This appeal is from the order of court discharging plaintiff's rule to show cause why execution should not issue against Ethelbert Watts, John Steel Twells and John H. Duckemiller, composing the limited partnership defendant. The rule was not served on Twells nor pressed against Duckemiller, and for that reason the case was proceeded in to final order or decree against Watts alone.

The facts, as claimed by plaintiff in his history of the case, are gathered from the testimony, the recorded statement of the association, etc., and appear to be substantially correct.

The defendant company was the immediate outgrowth of a previous limited partnership, composed of Watts and Twells, two of the partners above named, and Eugene Borda, who retired upon the formation of the new partnership which was organized March 1, 1884, under the Limited Partnership Act of June 2, 1874, and its supplements. The rule was applied for under the second section of the original act.

As shown by the company's recorded statement, the total amount of capital " subscribed and to be paid and contributed in cash and in real and personal estate," is seventy thousand dollars, divided into 1400 shares of the par value of $50 each, the ownership of which shares, " when the entire amount of capital subscribed by each shall have been paid and contributed," is as follows:

| | | | | |
|---|---|---|---|---|
| Ethelbert Watts, | 699 shares, | par value | | $34,950 |
| John Steel Twells, | 699 | " | " | 34,950 |
| John H. Duckemiller, | 2 | " | " | 100 |
| Total, | 1400 | " | " | $70,000 |

It also shows the contribution and subscriptions of Mr. Watts as follows:

(1) That he "has contributed and subscribed his interest in the Vesta furnace property and other real estate particularly described in schedule A, at a valuation, approved," etc., $11,333.34.

(2) "And has likewise subscribed his further interest in the said real estate described in schedule A, . . . . as the same is to be acquired by him, by the payment of his proportion of the joint and several bond, of himself and John Steel Twells to Eugene Borda, of $5,833.33, by payment of which the net value of the furnace property will be proportionably increased, the incumbrance on the same being then reduced by that amount, which payment is to be made before the first of January, A. D. 1885," $2,916.66.

(3) His one half interest in certain personal property, itemized in Schedule B, and appraised, etc., at $8,700.

(4) Also a certain lease of the Henry Clay ore banks with improvements and machinery, described in Schedule C, appraised, etc., $4,000.

(5) "And has also subscribed his further interest in the real estate particularly described in schedule A, . . . . as the same is to be acquired by the payment of eight thousand dollars on account of a certain mortgage upon the Vesta furnace dated Oct. 1, 1881, and given to J. Edward Farnum, by the payment of which the net value of said furnace property will be proportionably increased, $8,000.

These five items, the first of which is recognized as a contribution and subscription, and the others as subscriptions, amount in the aggregate to $34,950, the full par value of his 699 shares of the capital stock.

The subscriptions of Mr. Twells consist of three items aggregating the same amount. The first is his interest in the Vesta furnace property and other real estate described in schedule A, valued at $23,334.34. The other two correspond in kind and amount with the 2d and 3d items of Mr. Watts' subscriptions, supra.

Mr. Duckemiller's subscription, $100, appears to have been paid in cash.

As to the $8,000 subscription of Mr. Watts, above mentioned, he "is to pay in cash," $3,500, thereof on April 1, 1884, $3,500 on October 1, 1884, and the residue, $1,000, on October 1, 1885. He appears to have made the first of these payments at or about the time it matured. The remaining $4,500 he has never paid.

In March, 1884, when the association was organized, the Vesta furnace property described in schedule A was valued at " $80,166.69 subject to incumbrances thereon amounting to $45,500, leaving the net value $34,666.69." The property was jointly owned at that time by Watts and Twells. Their respective interests therein, as we have seen, were contributed as capital, and together they amounted to $34,666.69, the exact net value of the property as scheduled. As alleged by the defendants, the incumbrances above mentioned consisted of " a mortgage for $28,000 (originally $35,000, dated October 1, 1881), belonging to J. Edward Farnum," and the Eugene Borda mortgage, $17,500, given to him to secure the amount due him from the former firm, of which he was a member.

In connection with the second mortgage held by Eugene Borda, Watts and Twells had given him their joint and several note for $5,833.33, being one third of said mortgage debt, for which amount they were thus personally liable. That was not paid at the time stipulated in the recorded statement; but, shortly afterwards Borda brought suit and collected the same from private property of Twells. Watts subsequently paid his half thereof to Twells and thus it may be said that the joint and several bond of Watts and Twells was paid by them in equal portions. The residue of the Borda mortgage debt appears to have been collected by foreclosure and purchase of the property at sheriff's sale in the fall of 1885. Speaking of his claim etc. Borda testified : " The whole indebtedness was $17,500 secured by mortgage on the furnace property and the individual bond of Watts and Twells for one third of the indebtedness. Shortly after the failure to pay the first installment, I received the one third from private property held by Mr. Twells and the balance by foreclosing the mortgage on the furnace property and buying it in at sheriff's sale." He thinks that took place in October, 1885.

By that judicial sale of the real estate covered by the mortgages, the equity of redemption theretofore vested in defendant company was divested and Borda became sole owner of said real estate. The company thus ceased to have any interest therein, and hence the $4,500, balance of Mr. Watts $8,000 subscription to the capital of company, could no longer be applied as contemplated by the terms thereof as expressed in the 5th

item of his subscriptions, supra. Why then should it not be treated as an unpaid balance of a cash subscription to the capital of the defendant company? If it ever was anything else, it virtually became a cash subscription by the sale under the mortgage which resulted in the payment of Borda's claim in full, and vested in him the company's title to the previously incumbered real estate. But, properly construed, the $8,000 item never was anything else than a cash subscription. In express terms it is made payable " in cash " on certain days, and while not payable directly into the company's treasury, to be used as its necessities may require, it is to be applied to payment pro tanto of one of the incumbrances, subject to which the company accepted and held the incumbered real estate. It is true the subscription is expressed in language that is calculated to convey the idea that a *contribution* of a " further interest in the real estate," etc., rather than a cash subscription was intended. The words are " his (Watts) further interest in the real estate particularly described in schedule A, . . . . as the same is to be acquired by the payment of eight thousand dollars on account of a certain mortgage," etc. How a payment in cash made by Mr. Watts, on account of the mortgage and directly to the use and benefit of the company, can be construed as an acquisition of a " further interest" in the incumbered property, which he could contribute as real estate to the capital of the company, is by no means clear. If it was in fact a payment on account of the mortgage in reduction of the mortgage debt and for the benefit of the company, it could not in any proper sense be regarded as a purchase by Mr. Watts of a " further interest " in the mortgaged premises. That the former and not the latter was the real transaction, and so intended by the parties, is shown, we think, by a subsequent clause of the recorded statement, wherein after specifying when and in what amounts the $8,000 subscription shall be paid, it is said : " All of said payments being on account and in reduction of the aforesaid mortgage . . . . held by J. Edward Farnum, and by which payments the encumbrance upon the property will be to that extent reduced."

While there may be some doubt as to whether the organization of the company defendant was in strict accordance with the

law, there is nothing in this record to warrant us in saying it was not.

It appears to be conceded that Mr. Watts' contribution of his interest in the real estate referred to in the first item of his subscription to capital was carried out in proper form. His subscriptions referred to in the next three items appear to have been substantially paid, etc. But, as to the fifth item, it appears that he has never paid or been released from the payment of the second and third installments of said subscription amounting together to ($4,500) four thousand five hundred dollars, and there appears to be no good reason why the plaintiff should not have execution against him for the purpose of collecting said balance of $4,500, with interest on each of the installments of which it is composed from the maturity thereof, and costs. The 3d specification of error is sustained. The others are dismissed.

The order of court, discharging the rule to show cause, etc., is accordingly reversed and rule reinstated; and it is now here ordered and adjudged that said rule be made absolute to the extent of authorizing the plaintiff to issue execution against the defendant Ethelbert Watts for the purpose of collecting said sum of $4,500, with interest, as aforesaid, and costs.